IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JUNE HOLLAND, et al.,

                Plaintiffs,

v.                              CIVIL ACTION NO.   2:21-cv-00377

CSX TRANSPORATION, INC., et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are motions for remand filed by Plaintiff June Holland [ECF No. 3] and Defendant Jennifer Jeffers [ECF No. 6]. The motions are fully briefed and are ripe for consideration. For the reasons that follow, I find that remand is inappropriate in this case. The motions [ECF Nos. 3, 6] are **DENIED**.

### I.    Background

On April 23, 2019, Michael Belter and Ralph Baker were killed when the all-terrain vehicle Belter was driving collided with a CSX Transportation, Inc. freight train at a private railroad crossing. On July 29, 2019, Plaintiff June Holland, as the personal representative of the Estate of Ralph Baker, the passenger on the ATV, filed this action in the Circuit Court of Lincoln County. Plaintiff named CSX and John Workman, the engineer of the train involved in the collision, as defendants (together, the "CSX Defendants"). Plaintiff also named the Estate of Michael Belter as a

defendant. The Belter Estate is not of diverse citizenship from Plaintiff. On March 10, 2020, Jennifer Jeffers, as the administrator of the Belter Estate, filed a cross-claim against the CSX Defendants.

The case proceeded well into discovery in state court. The following facts related to the state court discovery are relevant here:

- Plaintiff and the CSX Defendants served each other various interrogatories and requests for production;

- The parties conducted a mediation on February 24, 2020, at which all parties were present [ECF No. 1-4, at 57];

- On April 30, 2021, Plaintiff and the Belter Estate filed their expert disclosures which revealed they had hired a joint expert [ECF No. 1-5, at 69, 73];

- On May 14, 2021, CSX noticed the deposition of Mary Marcuzzi, primary care physician for both Michael Belter and Ralph Baker [ECF No. 1-5, at 77–79];

- All parties were present and had an opportunity to question Mary Marcuzzi at her deposition on May 20, 2021 [ECF No. 5, at 3]; and

- On May 21, 2021, Plaintiff and the Belter Estate conducted a site visit at the scene of the accident with their joint expert [ECF No. 5, at 3].

Discovery was set to conclude on July 1, 2020, but on June 4, 2021, the CSX Defendants received an email copy of a motion Plaintiff filed in state court to dismiss her claims against the Belter Estate. The state court entered an Order granting the motion[1] on June 10, 2021, and the CSX Defendants first received the Order on June

---

[1] The Order makes clear that the Belter Estate's cross claim against the CSX Defendants remains pending.

24, 2021. The CSX Defendants filed their notice of removal in this court on June 29, 2021, nearly two years after this action commenced in state court.

As I will explain, removal is typically barred more than one year after an action commences. But the CSX Defendants contend that removal is proper here because Plaintiff acted in bad faith by naming and not dismissing the Belter Estate as a defendant prior to the one-year deadline. Plaintiff and the Belter Estate have filed separate motions to remand this case to state court. Plaintiff argues that this case should be remanded to state court because the CSX Defendants cannot show the Plaintiff acted in bad faith to prevent removal prior to the one-year deadline. The Belter Estate argues remand is appropriate because the Notice of Removal was not filed within thirty days of the CSX Defendants first learning that the case had become removable.

## II.    Legal Standard

The right to remove a case from state to federal court derives solely from 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Where a case is not removable based on parties' initial pleadings, 28 U.S.C. § 1446(b)(3) provides that "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper" that alerts the defendant to the case's ability to be removed. The "other

paper" requirement is construed broadly to include information received by defendants both formally and informally. *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) (quoting *Broderick v. Dellasandro*, 859 F. Supp. 176, 178 (E.D. Pa. 1994)). When removal is based on diversity of citizenship, 28 U.S.C. § 1446(c)(1) further limits when a defendant may file a notice of removal. In that case, a defendant may not remove a case "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Removal statutes generally must be strictly construed against removal. *See, e.g., Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction."). Thus, the party seeking removal bears the burden of demonstrating jurisdiction. *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir. 2003). Here, the CSX Defendants' claimed basis for federal jurisdiction is diversity of citizenship under 28 U.S.C. § 1332, which provides that a federal district court has original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Critically, section 1332 requires complete diversity among the parties, meaning the citizenship of each plaintiff must be different from the citizenship of each defendant. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

This case presents two issues regarding the timeliness of removal: first, whether the case was removed within one year after commencement of the action *or*

4

whether the plaintiff acted in bad faith in order to preclude the defendant from removing the action, *id.* § 1446(c)(1); and second, whether the notice of removal was filed within 30 days after receipt by the CSX Defendants of a pleading or other paper from which the alleged grounds for removal arose, 28 U.S.C. § 1446(b)(3).

### III.   Analysis

#### A. The Bad Faith Exception

Pursuant to 28 U.S.C. § 1446(c)(1), "[a] case may not be removed ... on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." In this case, there is no dispute that the notice of removal was not filed until after the expiration of the one-year deadline for removal. Therefore, the pertinent question is whether Plaintiff acted in bad faith to prevent timely removal.

Although the Fourth Circuit has not deeply explored the contours of the bad faith exception, it is well settled that the plaintiff is the master of her complaint. *See Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) ("The general rule, of course, is that a plaintiff is the 'master of the claim,' and he may 'avoid federal jurisdiction by exclusive reliance on state law' in drafting his complaint." (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987))). Therefore, it "is not inherently bad faith to use strategy to defeat federal jurisdiction." *Brazell v. Gen. Motors, LLC*, No. CA 6:14–4588–TMC, 2015 WL 1486932, at *4 (D.S.C. Mar. 30, 2015) (citing *Duck Village*

*Outfitters v. Nationwide Mut. Ins. Co.*, C/A No. 2:14–cv–60–FL, 2015 WL 540149, at *2 (E.D.N.C. Feb. 10, 2015)).

So a defendant alleging bad faith by a plaintiff bears an arduous burden that requires evidence of forum manipulation. *See, e.g., Hamilton San Diego Apartments, LP v. RBC Capital Markets, LLC*, No. 14CV01856 WQH BLM, 2014 WL 7175598, at *4 (S.D. Cal. Dec. 11, 2014) (finding that the plaintiff "did not consistently fail to take steps to prosecute the claims against" the nondiverse defendant and that the plaintiff "provided consistent plausible reasoning for the timing of the [nondiverse defendant's] dismissal"); *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1263 (D.N.M. 2014) (finding that the plaintiffs "did not act in bad faith by keeping the removal-spoiling defendants" because the plaintiffs actively litigated their claims); *Mansilla–Gomez v. Mid–S. Erectors, Inc.*, No. 0:14–CV–00308–JFA, 2014 WL 1347485, at *2 (D.S.C. Apr. 3, 2014) (remanding case because the court did not find that plaintiff, who failed to include any jurisdictional information in his state court complaint, among other things, "acted in bad faith *in order to prevent* a defendant from removing the action" (emphasis in original)); *Lawson v. Parker Hannifin Corp.*, No. 4:13–CV–923–O, 2014 WL 1158880, at *6 (N.D. Tex. Mar. 20, 2014) (finding bad faith where the plaintiff "consistently failed to take steps to prosecute her claims against [the nondiverse defendant], including failing to serve him with discovery requests or noticing his deposition, and failing to seek a default judgment when [the nondiverse defendant] failed to timely answer the petition"); *Forth v. Diversey Corp.*, No. 13–CV–808–A, 2013 WL 6096528, at *3 (W.D.N.Y. Nov. 20, 2013) (finding that the

6

plaintiffs' "explanations for their failure to earlier dismiss [the nondiverse defendant] from the action [were] inconsistent and implausible"); *Watts v. RMD Holdings, Ltd.*, No. 2:12–CV–02181, 2012 WL 3860738, at *2 (S.D. W. Va. Sept. 5, 2012) (Johnston, J.) (finding no evidence or indication of bad faith on the part of the plaintiffs); *cf. Tedford v. Warner–Lambert Co.*, 327 F.3d 423, 428–29 (5th Cir. 2003) (case preceding the enactment of section 1446(c)(1) that permitted the one-year limit in section 1446 to be extended under equity "where a plaintiff has attempted to manipulate the statutory rules for determining federal removal jurisdiction").

To determine whether a plaintiff has acted in bad faith by dismissing removal-spoiling defendants only after the one-year deadline for removal, many courts employ the two-step process outlined in *Aguayo*. I will too.

> First, the Court looks to whether the plaintiff actively litigated against the removal-spoiling defendant in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. If the plaintiff did not actively litigate against the removal spoiler, then bad faith is established; if the plaintiff actively litigated against the removal spoiler, then good faith is rebuttably presumed. In the standard's second step, the defendant may attempt to rebut the good-faith presumption with direct evidence of the plaintiff's subjective bad faith.

59 F. Supp. 3d at 1263.

Keeping with *Aguayo*, this court has previously held that "any non-token amount of discovery or other active litigation against a removal spoiler entitles the plaintiff to the presumption [of good faith]." *Massey v. 21st Century Centennial Ins.*

*Co.*, No. 2:17-cv-01922, 2017 WL 3261419, at *7 (S.D. W. Va. July 31, 2017) (alteration in original) (citing *Aguayo*, 59 F. Supp. 3d at 1275).

Here, Plaintiff acknowledges that she "did not serve the [Belter] Estate with requests for production, interrogatories, and requests for admission." [ECF No. 5, at 6]. However, Plaintiff claims she did actively litigate her case against the Belter Estate because she "deposed Mr. Belter's treating physician [and] [d]uring said deposition, testimony was given which bore directly upon legal issues pertaining to the liability of the [Belter Estate]." *Id.* According to Plaintiff, this single claimed instance of discovery "soundly defeats Defendant's assertion of bad-faith and affords Plaintiff a presumption of good faith." *Id.*

As the CSX Defendants point out, however, the issue is not quite as straightforward as Plaintiff makes it seem. Dr. Marcuzzi was not just Mr. Belter's treating physician; she was Ralph Baker's as well. And it was not Plaintiff who noticed the deposition of Dr. Marcuzzi—it was CSX. Plaintiff did appear at the deposition and was afforded an opportunity to question Dr. Marcuzzi, but Plaintiff asked no questions related to Mr. Belter whatsoever. [ECF No. 8-11, at 67:1–72:18]. Rather, Plaintiff only asked questions to clarify the scope of Dr. Marcuzzi's expertise and about her treatment of Mr. Baker. Having reviewed the deposition transcript, it is clear that Plaintiff may have learned information helpful to her claim against the Belter Estate from the questions asked by the CSX Defendants. But this is insufficient to be considered "active litigation." Other than appearing, passively gathering information, and asking questions related to Mr. Baker, Plaintiff made no

attempt to further her claim against the Belter Estate. The only active litigation against the Belter Estate was on behalf of and at the insistence of the CSX Defendants. Therefore, I cannot find that Plaintiff actively litigated or engaged in any "non-token" amount of discovery against the Belter Estate. This establishes bad faith and permits the CSX Defendants to remove this case after the typical one-year deadline.

Plaintiff's Motion for Remand [ECF No. 3] is **DENIED**.

### B.  The 30-Day Rule

Even where, as here, removal is permissible after one year, a notice of removal must be filed "within thirty days after receipt by the defendant, through service of otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

The Belter Estate moves for remand on the basis that the CSX Defendants did not file their notice of removal within 30 days of first learning the case had become removable. In support, the Belter Estate points to the CSX Defendants' statement in their notice of removal that "since the commencement of the State Court Action, the Plaintiff and the [Belter Estate] are more akin to co-plaintiffs than adverse parties . . . Plaintiff and the [Belter Estate] co-retained an expert witness in the prosecution of their claims against" the CSX Defendants." [ECF No. 1, at 10 ¶ 32). According to the Belter Estate, because the CSX Defendants thought Plaintiff and the Belter Estate were akin to co-plaintiffs no later than April 30, 2021, when they filed their

9

expert disclosures, that is the date that triggered the 30 days for removal. That is, the Belter Estate claims the expert disclosures were "other paper[s] from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

The Belter Estate's argument is without merit. As I explained above, federal jurisdiction in this case requires complete diversity of citizenship. There is no question here that Plaintiff and the Belter Estate are not diverse from each other. Therefore, there was no basis for removal until Plaintiff dismissed its case against the Belter Estate. The federal courts are not concerned with whether the CSX Defendants *thought* the two were more akin to co-plaintiffs—the question is whether they were *in fact* still adverse parties in the case. At the earliest, the case became removable when Plaintiff filed its motion to dismiss the Belter Estate on June 4, 2021.[2] The CSX Defendants filed their notice of removal 25 days later on June 29, 2021. Removal was timely, and the Belter Estate's Motion for Remand [ECF No. 6] is **DENIED**.

## IV.   Conclusion

The Motions for Remand [ECF Nos. 3, 6] are **DENIED**. Because Plaintiff no longer has a claim against the Belter Estate, and both Plaintiff and the Belter Estate have claims against the CSX Defendants resulting from the same incident, the Clerk is **DIRECTED** to realign the parties so that the Baker and Belter Estates, through

---

[2] Arguably, the case did not become removable until the state court entered its Order granting the motion on June 10, 2021, and the CSX Defendant's time limit for removal did not begin until they received the Order on June 24, 2021. However, because removal is proper in any case, I will assume the earliest date is the operative one here.

their representatives, are plaintiffs in this matter. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      September 28, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

11